IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY WHEELER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| DENNIS LARSON, CHRISTINE | ) |
| BROWN, ANGEL RECTOR, LOUIS | ) |
| SHICKER, R. SHUTE, RANDY DAVIS, | ) |
| DR. AGRAWAL, G. TAYLOR, O. | ) Case No. 11–cv–0839–MJR–SCW |
| OBADINA, PAT QUINN, S.A. | ) |
| GODINEZ, JANET ROBERTS, H. | ) |
| BRYANT, NURSE MELVIN, P. | ) |
| DINTELMAN, ANGIE BRUS, DR. | ) |
| SHEPARD, DR. WAHL, DR. SHAH, | ) |
| CRISEY FENTON, SHERRIE L. | ) |
| PERKINS, E. BECKY, JACLYN O'DAY, | ) |
| | ) |
| Defendants. | ) |

# REPORT & RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

In this § 1983 civil rights case, Plaintiff Anthony Wheeler alleges, among other things, that his Eighth Amendment right to be free from unusual punishments has been violated by prison officials in the Illinois Department of Corrections (IDOC), by employees of the IDOC's health services contractor, Wexford Health Sources (Wexford), and by Wexford itself. Specifically for the purposes of this Report and Recommendation, Wheeler alleges the defendants were "deliberately indifferent to [his] serious medical need — his golf-ball-size, bleeding hemorrhoids." (Doc. 53).

The case is before the Court on Mr. Wheeler's motions and memorandum for preliminary injunctive relief, which together have been construed as a single motion for a

1

preliminary injunction. (Doc. 3, Doc. 15, Doc. 17, Doc. 19). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local rule 72.1(a), and Judge Reagan's Order dated July 24, 2012, for a Report and Recommendation. It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Mr. Wheeler's Motion for a Preliminary Injunction (**Doc. 3, Doc. 15, Doc. 17, and Doc. 19)**.

## PROCEDURAL BACKGROUND

Mr. Wheeler, acting *pro se*, filed this lawsuit on September 15, 2011. (Doc. 1). Over the subsequent five months, he filed three motions for preliminary injunctive relief and a memorandum in support of the third motion. (Doc. 3, Doc. 15, Doc. 17, and Doc. 19, collectively construed here as Wheeler's motion for a preliminary injunction). In his motions, Mr. Wheeler asks the Court to enjoin the defendants to arrange surgery on his hemorrhoids, an "operation he thinks essential." ***Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012).** In March 2012, District Judge Reagan issued an order denying Wheeler's collected motions. (Doc. 20). The Seventh Circuit vacated that order and remanded the case for an evidentiary hearing to determine whether Wheeler is entitled to the equitable relief he seeks.[1] ***Id.* at 683;** (Doc. 51). Mr. Wheeler was appointed counsel (Doc. 53), the matter was referred to the undersigned judge for a Report and Recommendation (Doc. 53), and after one continuance (Doc. 128) an evidentiary hearing was set for September 14, 2012.

---

[1] In his motions, Mr. Wheeler also moved the Court to enjoin IDOC officials from continuing to serve Mr. Wheeler his current diet, which he alleges is too heavy in soy. But at the evidentiary hearing held on 9/14/2012, Mr. Wheeler withdrew the portion of his motion for injunctive relief pertaining to his soy diet. Here, therefore, the only issue before the Court is injunctive relief vis-à-vis Mr. Wheeler's hemorrhoids.

**LEGAL STANDARDS**

Because the preliminary injunction standard turns in part on a movant's likelihood of ultimate success on the merits of his case, both the preliminary injunction standard and the standard for Mr. Wheeler's underlying Eighth Amendment claim will guide the Court's analysis.

1. **Preliminary Injunction Standard**

A preliminary injunction is "and extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." **Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). Accord Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"); Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc., 549 U.S. 1079, 1085 (7th Cir. 2008) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it") (internal quotation marks omitted).** To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm that the preliminary injunction would inflict on the defendants, and (4) that the injunction is in the public interest. **Judge v. Quinn, 612 F.3d 537, 546 (7th Cir. 2010) (citing Winter, 555 U.S. at 20).** The considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted. **Judge, 612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). **Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least

intrusive means necessary to correct that harm." **18 U.S.C. § 3626(a)(2).** *See also Westefer,* **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. **Graham v. Med. Mut. of Ohio, 130 F.3d 293, 295 (7th Cir. 1997)**. Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. **Id. (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)).** *See also* **W.A. Mack, Inc. v. Gen. Motors Corp., 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to the plaintiff the actual advantage which would be obtained in a final decree.").**

In this case, triggering the first prong of the preliminary injunction test — that he is likely to succeed on the merits — means Mr. Wheeler must show he is likely to succeed on his Eighth Amendment claim.

2. **Eighth Amendment Standard**

The Eighth Amendment's ban on cruel and unusual punishment is violated when prison officials or medical personnel act with deliberate indifference to a serious medical need. **Cotts v. Osafo, --- F.3d ----, 2012 WL 3240667 (7th Cir. Aug. 12, 2012); *Estelle v. Gamble*, 429 U.S. 97 (1976).** The standard for deliberate indifference is a high hurdle for a plaintiff: it requires showing something approaching a total unconcern for the prisoner's welfare in the face of serious risks. **Rosario v. Brawn, 670 F.3d 816, 821 (7th Cir. 2012).** The Eighth Amendment does not require that prisoners receive unqualified access to health care. ***Johnson v. Doughty,* 433 F.3d**

4

**1001, 1013 (7th Cir. 2006).** Rather, inmates are entitled only to "adequate medical care." **Boyce v. Moore, 314 F.3d 884, 888–89 (7th Cir. 2002).** A successful deliberate indifference claim is comprised of both an objective and a subjective element. **Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).**

First, an inmate must demonstrate that the medical need from which he is suffering is sufficiently serious — whether it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention. **Roe, 631 F.3d at 857.** To be serious, a medical condition need not be life-threatening, only a condition that would result in further significant injury or unnecessary and wanton infliction of pain if untreated. **Id. (citing Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010)).**

Second, an inmate must establish that prison medical professionals acted with a sufficiently culpable state of mind to support § 1983 liability. **Roe, 631 F.3d at 857.** Neither negligence nor inadvertence will support a deliberate indifferent claim: "deliberate indifference is not medical malpractice." **Id.** But an inmate need not show that defendants actually intended harm to befall him — it is enough to show they knew of a substantial risk of harm to the inmate and disregarded that risk. **Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). See also Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (conduct deliberately indifferent when defendant knows of a serious risk of harm and decides not to do anything to prevent that harm from occurring even though he could have easily done so).** Prison medical professionals are entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances. **Sain v. Wood, 512 F.3d 886, 894–95 (7th Cir. 2008)**. Treatment, therefore, does not preclude a finding of deliberate indifference if it was so blatantly inappropriate as to be divorced from any medical judgment. **Roe, 631 F.3d at 857–58.** And delaying treatment may constitute deliberate indifference if such delay exacerbated the inmate's

injury or unnecessarily prolonged the inmate's pain. ***McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).**

### FINDINGS OF FACT

The undersigned judge held an evidentiary hearing on September 14, 2012. During the hearing, the Court heard the testimony of Mr. Wheeler and Dr. Paul Talbot, who is employed by Wexford and based at Danville Correctional Center, where Mr. Wheeler is currently incarcerated. Dr. Talbot is not a defendant in the instant case. The following findings of fact are based on the record, on the documentary evidence submitted at the hearing, and on the witnesses' testimony.

First, a word about hemorrhoids. Generally speaking, a hemorrhoid is just a part of the body — a cluster of veins "lying beneath the mucous membranes lining the lowest part of the rectum or anus." (Pl. Ex. 3). The condition commonly known as "hemorrhoids" occurs when those veins become swollen or distended. At issue in this case are external hemorrhoids, which develop under the skin around the anus. An external hemorrhoid is painful when it becomes thrombosed — in other words, when the blood inside it clots. When not thrombosed, external hemorrhoids shrink into a piece of excess skin that, as Dr. Talbot put it, "you can see . . . hanging there in a collapsed state." That excess skin is called a skin tag.

Mr. Wheeler's testimony aligned with his complaint, as well as the position laid out in the instant motion. On a scale of one to ten, Wheeler testified that his inflamed external hemorrhoids are a "ten." Wheeler testified that his external hemorrhoids — from which he has suffered for five years — become inflamed "[d]uring and upon completion of each attempted bowel movement or passing of gas." That inflammation, Wheeler says, is accompanied by bleeding and a yellow, mucus-like discharge. When his hemorrhoids become inflamed they stay aggravated for a period of time, sometimes weeks. Most nights, according to Wheeler, he has to sleep with toilet paper between his "cheeks to prevent the bleeding from getting on [his] clothes and underwear and

6

sheets." Over the time he has suffered from hemorrhoids, Wheeler has received treatment from IDOC employees and IDOC medical contractors, whom he alerted to the problem during 2007. While incarcerated, Wheeler has received a stool softener, a fiber supplement, suppositories, and been told to drink plenty of water.

In 2010, while Wheeler was incarcerated at Pinckneyville Correctional Center (the site of events giving rise to this lawsuit), prison medical officials referred Wheeler to Dr. Leyland A. Thomas, an outside specialist in Centreville, Illinois. The implications of Wheeler's visit to Dr. Thomas were much contested during the evidentiary hearing. It is clear that on October 28, 2010, Dr. Thomas performed a colonoscopy on Mr. Wheeler. Thomas' report of the operation noted that Wheeler (who also had a polyp removed) did have large external hemorrhoids. (Doc. 131-1, p. 3). On his progress notes, Dr. Thomas scrawled "consider external hemorrhoidal resection" in one column, and in another "hemorrhoidectomy."[2] On readmission to Pinckneyville, medical officials noted that a "hemorrhoidal resection" was "recommended" and planned to submit Wheeler's case for "collegial review" regarding the hemorrhoidectomy. (Pl.'s Ex. 1, p. 3). Documentation from the collegial review indicates that the reviewing physicians disagreed with Dr. Thomas' assessment: "ext. hemorrhoidectomy not recommended at this time, as recent lab on 9-3-10 indicates H/H within the normal range. Suggestion made to continue to monitor [Wheeler's] condition." (Pl.'s Ex. 1, p. 4). The Court notes that the collegial review team seems to have based its (early-November) decision not on observations from Dr. Thomas's late-October visual inspection of Mr. Wheeler's anus, but on laboratory results that were almost two months old.

---

[2] The phrases "hemorrhoid resection," "hemorrhoidectomy," and "hemorrhoid excision" used interchangeably. "A narrow incision is made around [external hemorrhoid tissue] and the offending blood vessels are removed." The procedure requires general anesthesia and usually keeps patients from working for 7–10 days. (Pl.'s Ex. 3: *Hemorrhoids and what to do about them*, HARVARD HEALTH PUBLICATIONS (9/11/2012, 5:35 p.m.), http://www.health.harvard.edu/newsweek/Hemorrhoids_and_what_to_do_about_them.htm).

Mr. Wheeler also testified that "several other nurses" said something needed to be done with his external hemorrhoids.

In late July 2011, Mr. Wheeler was transferred from Picnkneyville to Danville, where Dr. Paul Talbot works as a physician. At Danville, Dr. Talbot has been Mr. Wheeler's primary care doctor. Between October 2011 and August 2012, Dr. Talbot performed five visual examinations of Mr. Wheeler's rectum, plus five digital examinations (which, as Plaintiff's counsel pointed out, also require a visual examination). Dr. Talbot did note two collapsed skin tags — one three-quarters of an inch in diameter and one half a centimeter wide. (Wheeler claims that Pinckneyville doctors had called the thrombosed hemorrhoids that created the tags "golf ball size"). But according to Dr. Talbot, at no time during his ten examinations of Mr. Wheeler's rectum were the skin tags filled with blood or show signs of infection, and when Talbot put pressure on them Mr. Wheeler did not evince pain. Dr. Talbot also testified that he used an assessment system called GUIAC to test for blood in Wheeler's stool (one test in June 2012 was apparently positive), and the INTERQUAL system (which his employers provide him) to determine treatment based on a patient's symptoms.

Dr. Talbot testified, and the documentary evidence shows, that during Mr. Wheeler's time at Danville, he was placed into the infirmary between August 10 and August 27, 2012. According to Danville medical records, Wheeler was admitted "claiming he [was] having continual rectal bleeding." Testimony and records indicate that And subsequent medical records indicate that, though Mr. Wheeler complained of bloody stool on one occasion, he never showed nurses or doctors in the infirmary that stool, nor did nurses or doctors ever note rectal bleeding. (*See* Pl.'s Ex. 1, pp. 9–27).

It is almost beyond dispute that Mr. Wheeler has suffered from inflamed external hemorrhoids at some point: it seems unlikely that he would have two noticeable skin tags without some history of those painfully enlarged vein clusters. Dr. Talbot maintained, however — and the

8

Court finds this part of his testimony credible, especially in light of Mr. Wheeler's long stay in the Danville infirmary with no self-reported problems — that Wheeler never had painful external hemorrhoids when he was examined by Talbot ten times over the last eighteen months, or when he was in the infirmary for almost two weeks during August 2012.

That is not to say that Dr. Talbot's testimony established Mr. Wheeler has received the best medical care available during his time in IDOC. Plaintiff's counsel effectively cross-examined Dr. Talbot on the effectiveness of Mr. Wheeler's current treatment. Though he claimed it was in error, Dr. Talbot admitted to writing "thrombosed" in three assessments of Mr. Wheeler (*See* Pl.'s Ex. 1, p. 5, stamped MED00161; p. 6, stamped MED00165; p. 13, stamped MED00185). And in challenging the discrepancy between the Dr. Thomas's hemorrhoidectomy recommendation and a collegial review's denial of that surgery, Plaintiff's counsel elicited a particularly novel (and incredible) conclusion from Dr. Talbot: that perhaps Dr. Thomas was just recommending hemorrhoid surgery for cosmetic reasons. Counsel also impeached Dr. Talbot by prodding him to admit that a statement (about a number being out of range on one of Wheeler's blood test) on his sworn affidavit was false.

Nevertheless, the facts indicate Mr. Wheeler has been receiving treatment for his hemorrhoids during the fourteen-plus months he has been incarcerated at Danville. With no comment on the quality of that medical care — other than that it seems to be well-documented and based on medical reasoning — the Court finds to be credible Dr. Talbot's testimony that Mr. Wheeler is, in fact, receiving medical attention at Danville.

And given the variance between Talbot's testimony and Wheeler's stark position that his pain level goes to ten every time he has a bowel movement or passes gas, the Court concludes that much of Mr. Wheeler's testimony is less than credible. If Wheeler were telling the truth about the severity of his symptoms and their duration, then each flatulence would spark a substantial

9

window of time where he is experiencing intense pain and where his skin tags become swollen and painful hemorrhoids. While it could be possible that Mr. Wheeler never had a bowel movement or passed gas in the day or two leading up to any of the ten rectal examinations performed by Dr. Talbot, it is certainly highly improbable. In assessing Wheeler's overall credibility, the Court also considers the fact that, upon being admitted to the Danville infirmary, he complained of "continual rectal bleeding," (Pl.'s Ex. 1, p. 9, stamped MED00175) but never showed a medical professional a bloody stool or evidenced rectal bleeding (*id.* at pp. 9–27). Indeed, the one time he claimed to have several bloody stools during the night, a nurse noted the next morning that he showed zero distress and zero bleeding (*id.* at p. 19, stamped MED00193). A medical notation of zero distress the morning after a bowel movement is certainly discordant with Mr. Wheeler's testimony that *every time* he has a bowel movement (or even passes gas) his pain level ratchets up to "ten," often for a substantial period of time. The Court is doubtful that a prisoner with a live case regarding colo-rectal problems would, while under medical observation, deposit a bloody stool and have rectal bleeding and show medical personnel no physical evidence of those acts. More likely is that Mr. Wheeler was exaggerating a past (or possibly recurring) medical problem.

## PROPOSED CONCLUSIONS OF LAW

Wheeler's instant motion should be denied because he cannot demonstrate a likelihood of success on the merits, or that he is likely to suffer irreparable harm. **See Judge v. Quinn, 612 F.3d 537, 546 (7th Cir. 2010).**

The Court cannot conclude that Mr. Wheeler has *no* chance on the merits. It is beyond dispute that at some point in his life he has had an external hemorrhoid problem, and that such a problem would lead to pain that could be considered unnecessary and wanton. **Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010).** And as to the possible mental culpability of Wheeler's caregivers, Dr. Talbot lost credibility when he defended the medical decisions of his Wexford

10

colleagues: his hypothesis explaining the collegial review board's denial of surgery is far from airtight. But as discussed above, Mr. Wheeler has significant credibility problems of his own: his position that every flatulent episode leads to severe pain undercuts his case. As importantly, the evidence submitted to the Court indicates that the collegial review board who denied Wheeler surgery after Dr. Thomas recommended it had *medical reasons* for doing so. They may have been bad medical reasons, or medical reasons that would give rise to a negligence claim — but negligence is not deliberate indifference. **Farmer v. Brennan, 511 U.S. 825, 834 (1994).**

The same analysis holds for the chances that Wheeler will suffer irreparable harm absent an injunction. A plaintiff seeking preliminary relief must demonstrate that irreparable injury is *likely* in the absence of an injunction. **Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (emphasis in original).** In *Winter*, the Supreme Court rejected the Ninth Circuit's standard that triggered preliminary relief upon a possibility (rather than a likelihood) of irreparable harm. **Id.** The Court reasoned that issuing a preliminary injunction "based only on a possibility" of harm is inconsistent of [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." **Id.**

Based on the evidence, the best argument Mr. Wheeler can muster is that his hemorrhoids come and go, and that he just hasn't happened to be in the infirmary (or able to get there) during one of his painful flare-ups. That is not enough to conclude that future irreparable harm is anything more than a mere possibility, especially given the fact that Mr. Wheeler, since he has moved to Danville, is clearly receiving regular medical care. The Court is satisfied that Mr. Wheeler is not being subjected to a continuing constitutional violation, which would require knowing disregard of a medical problem that is causing, or is likely to cause, Mr. Wheeler significant pain. Indeed, Dr. Talbot testified: "What I do know he is my patient now and we will go forward with his current care and management of all facets that are involved," and that should he at any

11

point see Wheeler's large skin tags swollen, he would himself recommend a hemorrhoidectomy. His current caregivers are using medical judgment to treat Mr. Wheeler as they see fit. The Constitution requires no more.

Finally, the Court notes that any potential injunctive relief here could not be more "narrowly drawn" than the treatment Wheeler has been receiving at Danville. **See 18 U.S.C. § 3626(a)(2).** He has had regular access to healthcare professional at Danville, and should his skin tags transform into painful external hemorrhoids, Wheeler can presumably put in for sick call without this Court enjoining his caregivers to examine his rectum. **See Thomas v. Ramos, 130 F.3d 754, 764 (7th Cir. 1997) ("federal courts are most reluctant to interfere with the internal administration of state prisons because they are less qualified to do so than prison authorities.").**

In short, Mr. Wheeler has stated a cognizable Eighth Amendment claim and raised questions about the competence of IDOC medical professionals. At some point in his life Mr. Wheeler has probably had large hemorrhoids. But to get the relief he wants, he will have to prevail at trial. Wheeler is currently receiving treatment for his rectal problems, and while he may not be getting the best possible treatment, that is not what the Eighth Amendment safeguards. He has not shown anything more than a mere possibility of irreparable harm should an injunction not issue. He may succeed in convincing a jury that medical officials have acted in a way that no minimally competent professional would have done, but he has not carried his burden of showing that to be likely. The Court will not, in the form of a mandatory injunction, grant Mr. Wheeler the ultimate relief he seeks without a trial. **See W.A. Mack, Inc. v. Gen. Motors Corp., 260 F.2d 886, 890 (7th Cir. 1958) (no preliminary injunction which would give "to the plaintiff the actual advantage which would be obtained in a final decree.").** His motion for preliminary injunctive relief should be **DENIED**.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Mr. Wheeler's Motion for a Preliminary Injunction (**Doc. 3, Doc. 15, Doc. 17, and Doc. 19)** be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g., Snyder v. Nolen***, 380 F.3d 279, 284 (7th Cir. 2004).  **Accordingly, and pursuant to District Judge Reagan's referral order (Doc. 53), Objections to this Report and Recommendation must be filed on or before Friday, September 28, 2012**.

IT IS SO RECOMMENDED.

DATE: <u>09/21/2012</u>                                                   <u>/s/ *Stephen C. Williams*</u>
                                                                          **STEPHEN C. WILLIAMS**
                                                                          United States Magistrate Judge